UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FELIX GARZA, § | | |
|     *Plaintiff*, § | | |
| § | | |
| v. § | | CIVIL ACTION H-14-3184 |
| § | | |
| DEEP DOWN, INC., CHAVARRIA OIL FIELD § | | |
| SERVICES, and CARLOS CHAVARRIA, § | | |
|     *Defendants*. § | | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is Defendants' motion for summary judgment. Dkt. 12. After reviewing the motion, responses, replies, and relevant law, the court finds that the motion should be GRANTED.

**I. BACKGROUND**

On November 6, 2014, plaintiff Felix Garza filed this collective action suit for unpaid overtime wages against Chavarria Oil Field Services, Carlos Chavarria, and Deep Down, Inc. (collectively "Defendants") under the Fair Labor Standards Act, 29 U.S.C. § 216(b) (2012) ("FLSA"). Dkt. 1.

Garza is a former security guard who worked for Chavarria Oil Field Services ("Chavarria Oil"). Chavarria Oil, a sole proprietorship owned by Carlos Chavarria, was hired as a vendor to provide security and landscaping services to certain Houston-area businesses, including Deep Down, Inc. Dkt. 17 at 6. Deep Down provides specialized services to the offshore energy industry to support deepwater exploration, development, production of oil and gas, and other maritime operations. Dkt. 14 at 8.

Garza alleges that he regularly worked more than forty hours per week as a security guard at two Deep Down facilities, but was paid the same hourly rate of pay for all hours worked. Dkt. 1

at 5. Garza asserts that he was entitled to be paid at least one and one-half times his regular rate for all hours worked in excess of forty hours per work week pursuant to 29 U.S.C. § 207 (2012). *Id.*

On April 30, 2015, Defendants filed a motion for summary judgment (Dkt. 12) and a motion to stay discovery (Dkt. 13). After considering the motions, Garza's response (Dkt. 14), and Defendants' reply (Dkt. 17), the court granted Defendants' motion to stay discovery (Dkt. 13) by limiting discovery to the matters raised in Defendants' motion for summary judgment, ordered the parties to complete such discovery by July 31, 2015, and invited the parties to submit additional briefing and evidence relevant to the motion for summary judgment by August 28, 2015. Dkt. 19. After the initial discovery was completed, Garza filed a supplemental response in opposition to Defendants' motion for summary judgment. Dkt. 20.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. LAW & ANALYSIS

A.   **Enterprise Coverage under 29 U.S.C. § 207**

The FLSA requires certain "employers" to pay qualifying employees for overtime work (hours in excess of forty hours per week) at a rate not less than one and one-half times their regular rate. 29 U.S.C. § 207(a)(1). The overtime provisions of the FLSA apply to employees who are either personally engaged in commerce or in the production of goods for commerce (individual coverage) or employed by an enterprise engaged in commerce or in the production of goods for commerce (enterprise coverage). *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). Either individual coverage or enterprise coverage is sufficient to invoke the FLSA's requirements. *Martin*, 955 F.2d at 1032. Garza does not allege that he is entitled to *individual* coverage under the FLSA. He therefore relies on enterprise coverage. To qualify for enterprise coverage, the employer's annual gross volume of sales must be equal to or in excess of $500,000. 29 U.S.C. § 203(s)(1) (defining "[e]nterprise engaged in commerce or in the production of goods for commerce" as "an enterprise whose annual gross volume of sales made or business done is not less than $500,000").

The following appears to be undisputed: (i) Garza's employment relationship with Chavarria Oil, by itself, does not entitle Garza to enterprise coverage because Chavarria Oil's annual gross volume of sales does not equal or exceed $500,000; (ii) Garza was not directly employed by Deep Down; and (iii) Deep Down and Chavarria Oil's combined annual gross volume of sales does exceed the $500,000 threshold.

In his original complaint, Garza alleges two separate theories for imposing enterprise coverage: (i) the joint employer theory (i.e., Deep Down and Chavarria Oil are joint employers of Garza and class members); and (ii) the single enterprise theory (i.e., Deep Down and Chavarria

function as a single business enterprise as defined in the FLSA). Dkt. 1 at 4. However, after reviewing Defendants' motion for summary judgment (Dkt. 12) and completing the initial discovery, Garza appears to have abandoned his joint employer theory, relying exclusively on the single enterprise theory.[1] *See* Dkt. 20 at 1-2 ("Thus, the primary issue before the Court is whether Chavarria and Deep Down constitute a single business enterprise so that their combined annual revenues are considered for purposes of enterprise coverage.").

**B.    Single Enterprise Theory**

Garza points out that the "FLSA contemplates that a covered enterprise may be comprised of separate establishments whose financial transactions are separately accounted for, or whose business is conducted with that degree of independence in day-to-day operational management which is normally characteristic of physically separated establishments or multiple organizational units." Dkt. 14 at 11 (citing *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296 (5th Cir. 1969)).

Whether Deep Down and Chavarria constitute a single enterprise is a question of law. *Reich v. Bay, Inc.*, 23 F.3d 110, 114 (5th Cir. 1994). To establish that two entities functioned as a single enterprise, Garza must demonstrate that the entities: (1) engaged in related activities; (2) were a unified operation or under common control; and (3) shared a common business purpose. *Id*. at 114. Because Garza cannot establish elements (2) and (3), his single enterprise theory fails.

**1. Related Activities**

Activities are considered "related" when they are "the same or similar or when they are auxiliary or service activities such as warehousing, bookkeeping, purchasing, advertising, including,

---

[1]The "joint employer" and "single enterprise" concepts are distinct. Although there has been a blurring of these concepts by some courts, the Supreme Court itself has recognized that the two concepts approach the issue of "who is the employer" from two different viewpoints and a different standard is applied for each theory. *See NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982).

generally, all activities which are necessary to the operation and maintenance of the particular business." *Id*. Activities having a reasonable connection with the major business purpose of an enterprise would be considered related. *Id*.

Deep Down hired Chavarria Oil as an outside vendor to provide landscaping and security services at two Deep Down locations in the greater Houston area. Dkt. 1 at 3. Garza worked as a security guard at each of these two facilities during his 6:00 p.m. to 6:00 a.m shifts. Dkt. 14 at 9.

Garza asserts that the Department of Labor ("DOL") has identified the "watchmen and protective" services performed by Garza and Chavarria as "auxiliary activities" which constitute related activities for purposes of enterprise coverage. Dkt. 20 at 4 (citing 29 C.F.R. § 779.208 (2015)). However, even if such services are deemed to be "related activities," Garza cannot establish that such related activities were performed through unified operation or under common control for a common business purpose. *See* 29 C.F.R. § 779.208 (stating that only "when such [auxiliary] activities are performed through unified operation or common control, for a common business purpose, they will be included in the enterprise").

**2. Unified Operation or Common Control**

In its most recent response, Garza does not dispute Defendants' assertion that Deep Down and Chavarria Oil were not under common control or common ownership. Dkt. 20. Therefore, Garza relies on its assertion that these two companies performed related activities through a "unified operation" to serve a common business purpose. *See* 29 C.F.R. § 779.219 (2015) ("The performance of related activities through 'unified operation' to serve a common business purpose may be achieved without common control and without common ownership.").

5

The Code of Federal Regulations defines "unified operation" as combining, uniting, or organizing the performance of related activities so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose. 29 C.F.R. § 779.217 (2015). The Code states that unification may be accomplished "through agreements, franchises, grants, leases, or other arrangements which have the effect of aligning or integrating the activities of one company with the activities of others." 29 C.F.R. § 779.218 (2015).

Section 779.220 sets forth several examples of where a unified operation may exist as to separately owned or controlled activities which are related. 29 C.F.R. § 779.220 (2015). Examples include instances where separately owned and controlled companies agree to conduct their activities in such manner as to be for all intents and purposes a single business enterprise, in furtherance of one of the following shared goals:

> The various units may operate under a single trade name; construct their establishment to appear identical; use identical equipment; sell generally the same goods or provide the same type of services, and, in some cases, at uniform standardized prices; and in other respects appear to the persons utilizing their services or purchasing their goods as being the same business. They also may arrange for group purchasing and warehousing; for advertising as a single business; and for standardization of their records, as well as their credit, employment, and other business policies and practices. In such circumstances the activities may well be performed through "unified operation" sufficient to consider all of the related activities performed by the group of units as constituting one enterprise, despite the separate ownership of the various segments and despite the fact that the individual units or segments may retain control as to some or all of their own activities.

29 C.F.R. § 779.220 (2015).

None of these examples apply in this case. Garza does not even allege that the Defendants have an agreement (formal or otherwise) to conduct or coordinate their activities in a unified fashion. The only allegations that even remotely resemble any of the above listed examples are Garza's initial

allegations that (i) Deep Down and Chavarria Oil "share" seven employees that work as security guards at Deep Down facilities, and (ii) that Deep Down has the effective power to fire these employees. Dkt. 1. at 3-4.  However, facts disclosed during initial discovery do not support these allegations.

In his most recent response, Garza does not dispute any of the following facts asserted by Defendants in response to Garza's interrogatories:  Deep Down hired Chavarria Oil as a vendor to provide security and landscaping services at two of its Houston locations. Dkt. 17 at 5.  There is no ownership overlap between the two companies. *Id*.  No officers served both companies at any time. *Id*.  There are no agreements between Chavarria Oil and Deep Down describing or controlling the business arrangement between the companies. *Id*.  Indeed, the only agreement between the two companies is their oral agreement hiring Chavarria Oil to perform the requested security and landscaping services. *Id*.  Moreover, Chavarria Oil does not share activities such as warehousing, bookkeeping, advertising, or office space with Deep Down, Deep Down did not purchase any equipment for Chavarria Oil, no employees are used interchangeably, and Deep Down did not have the authority to hire or fire any of Chavarria Oil's personnel, including Garza. *Id*. at 5-6.

Garza cites to *Bay* to support his argument that a unified business operation exists where two separate companies each receive benefits because of their unification.  *Bay*, 23 F.3d at 115. However, the facts in *Bay* were vastly different.  In that case, the Fifth Circuit concluded that two entities had a unified operation where (i) the two entities were under common control; (ii) one entity performed many different functions for the other, including advertising for recruitment, payroll, and bookkeeping; and (iii) entity A supplied entity B with labor constituting 90% of entity A's business,

7

entity B received the majority of its blue collar labor from entity A, and entity A closed its shop when entity B ceased utilizing its services. *Id*. at 114.

The other cases Garza cites are also distinguishable. In *Shultz*, the Fifth Circuit concluded that the same individual "dominated both corporations, exercised control over their operations, and in practical effect used the two corporations as a single enterprise to engage in the roofing business." *Shultz*, 413 F.2d at 1299. In *Donovan*, the Fifth Circuit held that three entities together met the statutory definition of an "enterprise" within the scope of the FLSA where (i) a garbage collection business, a commercial building maintenance service, and a pest control service were deemed complimentary businesses; (ii) the three companies were held out to the public as a single entity operating under the same tradename; (iii) the corporations shared office space, clerical staff, business leads, and a common telephone system; and (iv) the same individual exercised authority over all three entities. *Donovan*, 672 F.2d at 530.

Aside from the fact that each of the Defendants benefitted from Chavarria Oil's security services, there is no evidence to support Garza's theory that Deep Down and Chavarria Oil performed related activities through a unified operation. This evidence alone is insufficient for finding the existence of a unified business operation.

### 3. Common Business Purpose

The Code of Federal Regulations defines the term "common business purpose" as "encompass[ing] activities whether performed by one person or by more than one person, or corporation, or other business organization, which are directed to the same business objective or to similar objectives in which the group has an interest." 29 C.F.R. § 779.213 (2015). The Fifth Circuit has held that "[a] common business purpose exists if 'the separate corporations engaged in

8

complementary businesses, and were to a significant degree operationally interdependent.'" *Bay*, 23 F.3d at 115-16 (quoting *Donovan*, 672 F.2d at 530).

Garza asserts that a common business purpose exists because "both businesses work together and benefit from the maintenance and security of Deep Down's facilities." Dkt. 14 at 12. Garza again cites to *Bay* to support his argument that Defendants shared a common business purpose. However, for the reasons discussed above, *Bay* is inapposite. Simply having a mutually beneficial working relationship does not, alone, create a common business purpose. If this were the standard, virtually all companies that did business together would be deemed a single enterprise for purposes of the FLSA.

The evidence shows that Chavarria Oil's interest in maintaining the security of Deep Down's facilities was simply in furtherance of its independent business objective of earning income. This is insufficient to satisfy the common business purpose requirement. *See Hicks v. Avery Drei, LLC*, 654 F.3d 739, 746 (7th Cir. 2011) ("More than a common goal to make a profit, however, must be shown to satisfy the requirement."(quoting *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1367 (5th Cir. 1973))); *see also* 29 C.F.R. § 779.213 (2015) ("Where, however, the facts show that the activities are not performed as a part of such enterprise but for an entirely separate and unrelated business, they will be considered performed for a different business purpose and will not be a part of that enterprise.").

Even if the parties' mutual benefit could be deemed a sufficiently common business purpose, Garza cannot demonstrate a sufficient degree of operational interdependence. Garza argues that the entities are operationally interdependent based on his assertions that (i) Deep Down is Chavarria Oil's only customer, (ii) all of Chavarria Oil's employees were assigned to work at Deep Down's

9

facilities, and (iii) virtually all of Chavarria Oil's revenue comes from Deep Down. Dkt. 14 at 9. However, even assuming these allegations are true, this is entirely consistent with Defendants' contention that Chavarria Oil is merely an outside vendor hired to perform lawn maintenance and security services for Deep Down. Indeed, Deep Down hired a multitude of other maintenance vendors for pest control, cable television, housekeeping, payroll, etc. Dkt. 17 at 1. The fact that Chavarria Oil's business model is dependent upon Deep Down's existence does not, by itself, establish *operational* interdependence. All other evidence demonstrates that Deep Down and Chavarria Oil were independent entities. Accordingly, Garza cannot establish a sufficient degree of operational interdependence between Chavarria Oil and Deep Down to satisfy the common business purpose element of Garza's single enterprise theory.

## IV. CONCLUSION

Garza has failed to produce sufficient evidence to create a genuine issue of material fact as to the existence of enterprise coverage. Accordingly, Defendants' motion for summary judgment is GRANTED. All of Garza's claims are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on October 8, 2015.

_____
Gray H. Miller
United States District Judge